# CARY KANE

A LIMITED LIABILITY PARTNERSHIP FOR THE PRACTICE OF LAW

1350 Broadway, Suite 1400
New York, NY 10018

ANTHONY P. CONSIGLIO
ACONSIGLIO@CARYKANE.COM

WRITER'S DIRECT TEL/FAX
(212) 871-0537 (T)
(646) 599-9577 (F)

June 29, 2018; Corrected July 11, 2018

**By ECF**

Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    **Joint Request for Approval of FLSA Settlement
Castro v. United Parcel Service, Inc., 18 CV 1286 (RJS) (SDA)**

Dear Judge Sullivan:

This firm represents the 113 Plaintiffs in this action asserting claims for unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Defendant United Parcel Service, Inc. ("UPS" or "Defendant"). We write on behalf of all parties to jointly request the Court's approval of the proposed settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 769 F.3d 199 (2d Cir. 2015), *cert. denied* 136 S. Ct. 824 (2016), and this Court's Orders (ECF Nos. 112, 117, 122). The following exhibits are annexed hereto and incorporated in this request:

    Exhibit A    Joint Stipulation of Settlement and Release executed by the named Plaintiffs and the Defendant (the "Settlement Agreement"), including Schedule A setting forth proposed Settlement Awards to be paid to eligible Plaintiffs

    Exhibit B    Proposed notice of settlement to be sent, upon the Court's approval of the settlement, to the 113 Plaintiffs and 8 other employees eligible to participate in the settlement

**1.**    **Background**

Plaintiffs are full-time employees of Defendant UPS. Plaintiffs' job title is "Combination Helper"[1] because their position consists of a combination of work divided into two distinct parts.

---

[1] This and other various capitalized terms used in this letter motion are defined in the parties' proposed settlement agreement, Exhibit A attached hereto.

# C A R Y   K A N E

Honorable Richard J. Sullivan
June 29, 2018
Page 2


They work part of each workday in one of UPS's facilities where they process and load packages onto trucks for delivery, and the other part of the day is spent working as a driver's helper delivering packages on an assigned route within the greater New York City region.

The instant litigation and settlement pertain to the Combination Helpers' claims for unpaid travel time, that is, time spent traveling between their assigned work at one of UPS's facilities and their assigned duties on a specified delivery route. The Plaintiffs were part-time employees of UPS until mid-2014, when the full-time position of Combination Helper was created pursuant to collective bargaining. With only a few exceptions, Plaintiffs are currently employed as full-time Combination Helpers employed by UPS, and continue to enjoy the additional benefits that full-time employment has brought them. The travel time at issue in this case was incurred during Plaintiffs' first two years of employment in the newly created full-time position of Combination Helper, the period of about June 2014 to July 2016.

Plaintiffs are members of a labor union, Teamsters Local 804. Although Local 804 is not a party to this action, Local 804 has paid Plaintiffs' attorney fees and costs incurred during this litigation and the pre-litigation investigation and negotiation of their claims. Local 804 and UPS collectively bargained to create the full-time Combination Helper position in 2014. At some point in 2016, Local 804 and UPS became aware of Plaintiffs' claims for unpaid travel time. UPS began paying Combination Helpers for the travel time at issue in or about July 2016. The parties subsequently agreed to seek a resolution of Plaintiffs' claims for unpaid wages for travel time that was not compensated from 2014 to 2016.

Thus, the pre-litigation investigation and subsequent settlement of this action represents a concerted effort to reach a fair and reasonable result for all parties. From the beginning of the investigation, the parties were hopeful that they would be able to negotiate a settlement and resolve Plaintiffs' claims and would seek Court approval for the purpose of finality pursuant to *Cheeks*. Given the preexisting and continuing employment relationship between the parties, UPS and Plaintiffs have a mutual interest in cooperating to amicably resolve this dispute.

The eight named Plaintiffs commenced this action on February 13, 2018, when it appeared that a settlement acceptable to all parties was within reach. The Complaint asserts claims on behalf of Plaintiffs and all similarly situated employees for unpaid overtime wages under the Fair Labor Standards Act (FLSA) (First Claim) and New York Labor Law (NYLL) (Second Claim); unpaid wages at the regular rate of pay under the NYLL (Third Claim); and failure to pay weekly wages under the NYLL (Fourth Claim). The Complaint included collective and class action allegations.

During the pendency of this action, the parties continued their negotiation efforts, and on April 3, 2018, the parties informed the Court that they had reached a settlement in principle.

# CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 3


As discussed below, the terms of the proposed settlement are fair and reasonable in light of the factors for court approval of FLSA settlements set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[2]

**2.      Summary of the Proposed Settlement**

The parties have agreed on a gross settlement amount of $494,967.45 to resolve the claims of 121 Combination Helpers (including a few individuals employed in similar positions) employed by UPS.  The entire settlement sum is payable to the Plaintiffs directly, and no amount will be used for the payment of attorney fees to Plaintiffs' counsel, Cary Kane LLP, or any administrative or litigation costs because, as stated above, the Plaintiffs' labor union, Local 804, has funded this litigation and the underlying investigation and negotiation.  Cary Kane agreed to accept a discounted fee from Local 804 for its work on the case, assuming that the case could be settled before adversarial litigation was underway.

The proposed Settlement Agreement sets forth each Plaintiff's allocation of the gross settlement amount and provides that the settlement proceeds for any Combination Helpers who do not elect to participate in the settlement by cashing their checks will revert to UPS, provided that the parties and their counsel have cooperated to the full extent possible to locate and communicate with any such Combination Helpers and to re-issue settlement checks to any Combination Helper who wishes to participate in the settlement.

The Settlement Agreement also provides for a limited release of wage and hour claims for unpaid travel time only, and does not contain any broad confidentiality restrictions.

**3.      The Plaintiffs' Acceptance of the Proposed Settlement**

The parties and Local 804 cooperated to create the roster of all known Combination Helpers employed in the New York metropolitan region during the period of time at issue (June 2014 to July 2016).  The 121 Combination Helpers identified include the eight named Plaintiffs, 105 Combination Helpers (including a few individuals employed in similar positions) who have joined the litigation by filing consents to become party plaintiffs, and eight other employees who worked as Combination Helpers (or in similar positions) during the relevant period.  Of the

---

[2] "In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion" (internal quotation marks and citation omitted).

# CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 4

remaining eight Combination Helpers, one (Patrick Alessi) is deceased, and we intend to coordinate with his estate to transfer his settlement proceeds; two Combination Helpers have indicated that they are still considering whether to participate; and five have not responded to our repeated attempts to communicate with them by telephone, mail, and email at the contact information provided to us by UPS. Thus, we expect at least 114 of the 121 Combination Helpers to participate in the settlement.[3]

As the attorney at Cary Kane handling most of the day-to-day work on this case since March 2017, I have had at least one discussion, by telephone or in person in individual or small-group meetings, with each of the 114 Combination Helpers expected to participate in the settlement, with the exception of the deceased employee. In many or most cases, I have had more than one detailed discussion with each Combination Helper. In these discussions, I explained the basis of the legal claims for unpaid travel time; confirmed the factual information provided to Cary Kane by the Combination Helper in a questionnaire form at the beginning of our investigation; and obtained additional information about each individual's employment and travel time claim, including, among other things, their dates of service in the Combination Helper job title, the details of travel between their delivery route and the UPS facility, their method of travel, how they tracked and reported their hours worked, and their understanding of the basis of their pay during the period in question. I also reviewed with each individual the payroll records produced confidentially by UPS during our pre-litigation investigation, and my initial calculation of the Combination Helper's damages based upon those payroll records and/or other travel time information obtained, and explained the course of our settlement negotiations with UPS.

In addition, my discussions addressed the consent form to become a party plaintiff in the litigation. In particular, I explained the role of the named Plaintiffs in making settlement and litigation decisions, and the Combination Helper's option to join the case or pursue their claims through another attorney or forum. I explained the release of wage and hour claims that would be required in settlement. Finally, I discussed with the Combination Helpers the considerations faced by the named Plaintiffs in deciding whether to accept a settlement or litigate the case.

We are confident that the eight named Plaintiffs and 105 opt-in Plaintiffs filed informed and meaningful consents to become party plaintiffs; and they, and any of the remaining nine eligible

---

[3] In addition to the 121 Combination Helpers on the roster that we incorporated in the Settlement Agreement, two additional Combination Helpers were identified who declined to participate in the settlement. Of those two people, one advised counsel that he had a terminal illness and did not wish to be involved for that reason; the other believed that all of his travel time was previously compensated because his travel time was tracked in a different manner from the other Combination Helpers due to the particular position that he held at UPS before the position of Combination Helper was created.

# CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 5

Combination Helpers who may decide to participate in the settlement, will accept settlement checks on an informed and meaningful basis.

**4.** *Wolinsky* **Factor 1 – The Plaintiffs' Range of Possible Recovery in Light of the Damages To Be Paid Under the Proposed Settlement**

*The Proposed Settlement.* Cary Kane calculated an estimated $534,868.66 in total unpaid wages for the 121 Combination Helpers' travel time. These damages were calculated individually for each Combination Helper, based on a detailed analysis of UPS payroll records, information obtained from each Plaintiff, and on certain assumptions made where facts were either in dispute or unknown at this time, such as the exact length of time in which travel time was unpaid, the time it took for each Combination Helper to travel between work sites, and the number of hours worked by each Combination Helper each week warranting the overtime rate of pay for the unpaid travel time.

The proposed Settlement Amount of $494,967.45 represents 92.54% of the $534,868.66 in unpaid wages calculated and estimated by Cary Kane – a substantial amount of the estimated unpaid wages owed to Plaintiffs if successful on all unpaid wage claims. Although the settlement amounts are less than the maximum potential recovery of the estimated unpaid wages plus an equal amount in liquidated damages, the settlement is exceptionally reasonable at this stage and in light of the legal and evidentiary challenges to proving all wages owed, and to establishing that UPS did not act in good faith in order to prevail on Plaintiffs' claims for liquidated damages. *See Hernandez v. Loco 111 Inc.*, 2017 U.S. Dist. LEXIS 200406, *4-6 (S.D.N.Y. Dec. 5, 2017) (Abrams, J.) (approving FLSA settlement of 37% anticipated maximum recovery); *Beckert v. Rubinov*, 2015 U.S. Dist. LEXIS 167052, *4-5 (S.D.N.Y. Dec. 14, 2015) (Engelmayer, J.) (approving FLSA settlement of 25% of maximum possible recovery); *Chapman-Green v. Icahn House W. LLC*, 2013 U.S. Dist. LEXIS 25671, *4-5 (S.D.N.Y. Feb. 21, 2013) (Dolinger, M.J.) (approving FLSA settlement compensating plaintiffs approximately 89% of what they claimed as their unpaid wages); *Hernandez v. Tabak*, 2013 U.S. Dist. LEXIS 51852, *3-4 (S.D.N.Y. Apr. 10, 2013) (Castel, J.) (approving settlement of $7,370 for plaintiff when the maximum possible recovery that plaintiff could have received totaled $19,242.67 only if plaintiff succeeded in proving violations of both the FLSA and state law, established willfulness, and received liquidated damages under both statutes).

*Cary Kane's Calculation and Estimation of Unpaid Travel Time Damages.* To calculate an estimate of unpaid travel time damages for each Combination Helper, we reviewed and analyzed three types of information: (1) the responses of individual Combination Helpers to our questionnaires requesting information such as their average travel time, whether they traveled with the driver of the UPS truck or by public transport or by other means, and their assigned work locations; (2) the average travel time for each Combination Helper calculated by UPS; and (3) confidential payroll records provided by UPS for the period 2014-2016, including the period

# CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 6

of time from July to December 2016 showing the travel time that UPS coded and paid as such for each Combination Helper after UPS agreed to begin compensating the Combination Helpers' travel time.

Should the Court wish more information about the process by which we calculated and estimated these damages, or the assumptions we incorporated about disputed facts, we stand ready to provide that information.

*The Range of Possible Recovery of Unpaid Wages.* We believe that Cary Kane's estimate of unpaid wages is a reasonable approximation of the unpaid wages that each Plaintiff would be able to prove after full discovery. Nevertheless, we acknowledge that a number of uncertainties exist in this regard. In fact, some of those uncertainties would likely remain even after full discovery. For example, UPS asserts that GPS records and other logs associated with the trucks and/or travel routes of each Combination Helper could disprove Plaintiffs' recollections as to the actual length of their travel time. UPS also asserts that a full examination of payroll coding could reveal payments made to Combination Helpers for travel time that has not yet been discovered. Thus, Plaintiffs' recollections of their travel time, taken into account in the proposed settlement, might be partly disproved in discovery, or might not be fully credited at trial. We believe that the proposed settlement, at 92.54% of the estimated unpaid wages, at this early stage of litigation is eminently reasonable, given these uncertainties. "[T]he value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, *8 (S.D.N.Y. May 28, 2009) (Freeman, M.J.).

*Possible Recovery of Liquidated Damages.* The potential for recovery of statutory liquidated damages under the FLSA and NYLL is uncertain. For Plaintiffs to recover 100% of the possible liquidated damages on their unpaid wage claims, UPS would have to fail to prove that its non-payment of wages for travel time was in good faith under the FLSA and the NYLL because it had reasonable grounds to believe that its non-payment was in compliance with the law, and it acted in a reasonably objective way. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 502-03 (S.D.N.Y. 2017) (Failla, J.) (standard is same under FLSA and NYLL). The issue of compensable travel time was not addressed in the collective bargaining that led to the creation of the Combination Helper position in 2014, but UPS began compensating travel time two years later, when the issue was brought to its attention. For this reason, UPS may be able to demonstrate good faith, and, if so, any liquidated damages would be uncertain in litigation. We believe that the Combination Helpers' decision to forego liquidated damages in exchange for an early settlement is reasonable in these circumstances. *See Hui Liang Zhao v. Hiro Sushi at Ollie's, Inc.*, 2016 U.S. Dist. LEXIS 194344, *8 (S.D.N.Y. Nov. 10, 2016) (Moses, M.J.) (overall settlement amount that provided for unpaid wages but no liquidated damages was fair and reasonable where the parties acknowledged that the defendants had a strong argument regarding good faith that, if successful, would prohibit the plaintiffs from recovering any

CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 7

liquidated damages); *Chapman-Green*, 2013 U.S. Dist. LEXIS 25671 at *5 ("the surrender of the possibility of liquidated damages gives plaintiffs immediate relief and avoids the risk, which is not insubstantial, of a potential loss or a much smaller recovery"). Additionally, because the proposed settlement relieves UPS of any claim or payment for Plaintiffs' attorney fees, it is reasonable to settle at this stage without compensation for liquidated damages.

5. ***Wolinsky* Factors 2 and 3 – The Burdens, Expense, and Risks of Litigation Avoided by Settlement**

The cost and other efforts of litigating the case through discovery and possibly trial would be a significant burden and challenge on all parties. The definitive resolution of the disputed facts regarding the precise amount of unpaid travel time would be a lengthy and costly process and may not ultimately be possible. There is no known single source by which the travel time can be accurately determined for each of the 112 Plaintiffs, but rather there are a number of possible documentary sources both inside and outside the payroll records, including various forms of time and attendance recordkeeping believed to have been used by UPS in multiple different locations at issue, GPS tracking on the delivery trucks and other logs of time kept by the full-time drivers of those trucks, and other forms of time tracking that the Plaintiffs may wish to put forward. This would leave the parties with expensive and time-consuming tasks of discovery and analysis, and would quite possibly complicate, rather than simplify, the factual issues. In addition, the Plaintiffs recognize that there may be challenges to certifying a class action, as UPS will argue that this case will necessarily require individualized inquiries. By settling now, the Plaintiffs will obtain a guaranteed outcome while avoiding the inherent risks of trial, after months or even years of protracted litigation, and the burden of having to testify in depositions and trial. *See Calderon v. Congee Place, Inc.*, 2016 U.S. Dist. LEXIS 53768, *6 (E.D.N.Y. Apr. 20, 2016) ("[B]ecause the number of hours that Plaintiffs worked remains a question of fact, settlement at this stage outweighs what could be a prolonged period of expensive litigation.").

There are also disputed legal issues about the correct way to compensate the Plaintiffs' travel time; whether liquidated damages are appropriate or not; and how, if at all, appropriate class treatment can be conducted. All of these factual and legal issues together suggest that the litigation would be long and difficult for all involved.

Local 804 funded this litigation on behalf of its members, and Cary Kane agreed to accept a discounted fee in an effort to avoid adversarial litigation. This exclusion of liability for Plaintiffs' claim for attorney fees in this fee-shifting case was a major incentive to UPS to settle the claims without protracted litigation on a mutually agreeable basis.

Because the vast majority of the Plaintiffs are still employed full-time at UPS, an amicable resolution, as embodied in the proposed settlement, will prevent the risk of an adversarial litigation interfering with the cooperative working environment.

# CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 8


**6.**     *Wolinsky* **Factors 4 and 5 – Arms' Length Bargaining; Possibility of Fraud**

The parties seek the Court's approval of this settlement that was fairly reached by experienced counsel as a result of arms-length negotiations conducted in good faith. "A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length." *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (Baer, J.).

Counsel for Plaintiffs and UPS negotiated over a lengthy period of time, after careful gathering and discussion of documentary evidence, and with extensive input from the Plaintiffs about their travel time. In or about October 2016, acting as Plaintiffs' attorneys, Cary Kane negotiated a confidentiality agreement and a tolling agreement with UPS that allowed the parties to share confidential documents and engage in confidential settlement negotiations in an effort to resolve the claims for unpaid travel time. From October 2016 to January 2018, the Combination Helpers provided to Cary Kane information about their duties, assigned facilities, delivery routes, assigned work hours, and travel time, UPS provided Cary Kane with payroll records, time and attendance logs, delivery logistics and tracking data, and other information about the Combination Helpers' travel time; and, through counsel, the parties engaged in analysis and discussion of the extent of compensable damages and likelihood of recovery.

Plaintiffs' counsel, together with a paralegal, reviewed and analyzed three sets of payroll records for each of the 121 Combination Helpers, consisting of some 10,000 or so pages of spreadsheets produced by UPS. Plaintiff's counsel reviewed and tabulated the Combination Helpers' responses to a questionnaire distributed in October 2016, and then followed up with one or more personal interviews of each of the 121 Combination Helpers in the months of November 2017 through May 2018. In the months of January to April 2018, Plaintiffs' counsel held a series of meetings with the eight named Plaintiffs to discuss the Combination Helpers' priorities, the strategy for both litigation and settlement, to decide the terms of all of the Plaintiffs' offers and responses in the final months of negotiation, and to formulate the Plaintiffs' acceptance of the settlement proposed herein, providing 92.54% of the Combination Helpers' estimated unpaid travel time.

There is no fraud or collusion here. The law firm of Cary Kane has represented employees since the firm was formed in 2004, and regularly represents employees in wage and hour lawsuits. *See, e.g., Palaguachi v. All City Remodeling, Inc.*, 15 CV 9688 (unpublished order, ECF No. 152) (S.D.N.Y. Sep. 13, 2017) (Torres, J.) (approving FLSA settlement on behalf of 83 employees in the amount of $825,000, including one-third contingency fee to Cary Kane); *Barbecho v. M.A. Angeliades, Inc.*, 11 CV 1717, 2016 U.S. Dist. LEXIS 45461, *7-8 (S.D.N.Y. Apr. 1, 2016) (Pitman, M.J.) (approving FLSA settlement on behalf of 21 employees, and noting the "exceptional diligence and zeal with which plaintiffs' counsel represented their clients"); *id.*, 11 CV 1717 (unpublished order, ECF No. 137) (April 12, 2017) (approving further settlements

# CARY KANE

Honorable Richard J. Sullivan
June 29, 2018
Page 9

in the same action); *Ordonez v. Navillus Tile, Inc.*, 15 CV 2575 (S.D.N.Y. Feb. 18, 2015) (unpublished order, ECF No. 32) (approving individual FLSA settlement for total sum of $235,000); *Zubair v. Entech Eng'g P.C.*, 900 F. Supp. 2d 362 (S.D.N.Y. 2013) (entering judgment in favor of plaintiff after bench trial on FLSA overtime claims), *aff'd*, 550 Fed. App'x 59 (2d Cir. 2014); *Boutros v. JTC Painting & Decorating Corp.*, 2014 U.S. Dist. LEXIS 110607, *19 (S.D.N.Y. Aug. 8, 2014) (approving individual FLSA settlements including attorneys' fees calculated at $400 per hour for experienced attorney); *Switzoor v. SCI Eng'g, P.C.*, 2013 U.S. Dist. LEXIS 129994 (S.D.N.Y. Sept. 11, 2013) (granting summary judgment in favor of plaintiff on his federal and state overtime claims).

**7.     Service Payments**

No service payments will be made. Because the case settled soon after commencement of the action, the named Plaintiffs did not spend a great amount of time on the case, although they did participate in several settlement discussion conferences as well as an initial organizing meeting in early February 2018. The named Plaintiffs are aware that they will not receive any compensation from this settlement beyond their regular payout calculated from their travel time, and they agreed to settle the case on this basis.

**8.     Plaintiffs' Attorney Fees**

As explained above, no attorney fees will be paid by UPS in this settlement, or deducted from the total settlement sum to be paid directly to the Plaintiffs.

\*     \*     \*

We appreciate the Court's consideration, and stand ready to provide any further information that the Court may request of us.

Respectfully submitted,

*/s/ Anthony P. Consiglio*

Anthony P. Consiglio

cc:  All Counsel (by ECF)