UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ELIZABETH CASTRO, ET AL.,                    :

                   Plaintiffs,          :

       vs.                                       :

UNITED PARCEL SERVICE, INC.,              :

                  Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 18 Civ. 1286 (RJS)

**JOINT STIPULATION OF
SETTLEMENT AND RELEASE**

     This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Elizabeth Castro, Aquanza Jones, Kaslyn Belgrave, Francis Cooper, Rawle Cummings, Scott DiBona, David Gotay, and Jessica Grandy as the named Plaintiffs in this action on behalf of all Plaintiffs, on the one hand, and United Parcel Service, Inc. ("UPS"), on the other (together, the "Parties").

## RECITALS

     WHEREAS, on February 13, 2018, Plaintiffs filed a class and collective action lawsuit in the United States District Court for the Southern District of New York, captioned *Elizabeth Castro, et al. v. United Parcel Service, Inc.*, No. 18 Civ. 1286 (RJS), on behalf of a group of current and former UPS employees, asserting claims against UPS for unpaid wages for travel time under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and, through Federal Rule of Civil Procedure ("FRCP") 23, under the wage and hour laws of New York (the "Litigation");

     WHEREAS, on April 3, 2018, the Parties advised the Court that they had reached a settlement of the Litigation in principle;

     WHEREAS, on June 18, 2018, the Court issued an Order directing the Parties to submit a copy of the Parties' settlement agreement to the Court for judicial approval and a joint letter explaining to the Court why the settlement is fair and reasonable under applicable law and, after granting the Parties' joint requests for extensions of time, directed the Parties to make their submissions to the Court on or before June 29, 2018;

     WHEREAS, without admitting or conceding any liability or damages whatsoever, the Parties have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

     NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation and the claims raised therein on the following terms and conditions.

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1.    **Acceptance Period.**  "Acceptance Period" means the ninety (90) days that Plaintiffs have to redeem/cash a Settlement Check.

1.2.    **Agreement.**  "Agreement" means this Joint Stipulation of Settlement and Release.

1.3.    **Approval Order and Judgment of Dismissal with Prejudice.**  "Approval Order and Judgment of Dismissal with Prejudice" means the Order entered by the Court approving the terms and conditions of this Agreement and dismissing the Litigation with prejudice.

1.4.    **Combination Helpers**.  "Combination Helpers" refers to workers employed by UPS since June 2014, in the full-time position of combination helper.

1.5.    **Court.**  "Court" means the United States District Court for the Southern District of New York.

1.6.    **Days.**  "Days" means calendar days, unless otherwise specified.

1.7.    **Effective Date.**  "Effective Date" means the date on which the Court grants final approval to the Settlement.

1.8.    **Litigation.**  "Litigation" means the litigation described in the first "WHEREAS" paragraph above.

1.9.    **Participating Plaintiffs.**  "Participating Plaintiffs" means those Plaintiffs who cash/redeem a Settlement Check in accordance with this Agreement.

1.10.   **Plaintiffs.**  "Plaintiffs" means the named Plaintiffs and all other individuals who have filed consents to participate in this action under the FLSA (*i.e.,* opt-in Plaintiffs).

1.11.   **Plaintiffs' Counsel.**  "Plaintiffs' Counsel" means Anthony P. Consiglio, Tara L. Jensen, and Walter M. Kane of Cary Kane LLP.

1.12.   **Potential Plaintiffs.**  "Potential Plaintiffs" means those Combination Helpers who are not named Plaintiffs or opt-in Plaintiffs but who are eligible to participate in this Settlement and will receive notice of the Settlement and a Settlement Check.

1.13.   **Settlement.**  The "Settlement" means the settlement contemplated by, and described in, this Agreement.

1.14.   **Settlement Amount.**  "Settlement Amount" means the Four Hundred Ninety-Four Thousand Nine Hundred Sixty-Seven Dollars and Forty-Five Cents ($494,967.45) that UPS has agreed to pay to settle the Litigation as set forth in this Agreement.  The Settlement Amount is inclusive of taxes withheld in accordance with Section 3.3, below.

**1.15. Settlement Award.** The "Settlement Award" is the portion of the Settlement Amount payable to each Participating Plaintiff as set forth in Schedule A hereto and as discussed more fully in the Parties' accompanying joint letter motion requesting the Court's approval of this Settlement.

**1.16. Settlement Checks.** "Settlement Checks" means checks issued to Plaintiffs for their individual Settlement Awards.

**1.17. UPS's Counsel.** "UPS's Counsel" means Allan S. Bloom, Peter D. Conrad, and Pinchos N. Goldberg of Proskauer Rose LLP.

## 2. APPROVAL OF SETTLEMENT

**2.1. Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2. Class Action Allegations.** Plaintiffs made certain class action allegations in their Complaint under FRCP 23, but, because 113 of the 121 potential participants in the settlement already have filed consents to join the Litigation with the Court, wish to settle all claims on an individual (and not a class) basis in this Settlement. Accordingly, Plaintiffs deem their class action allegations to be extinguished by this Settlement, upon approval of the Court. If the Court deems it necessary and so directs, Plaintiffs will file an amended Complaint in which they will remove their FRCP 23 class claims contingent upon the Court's approval and the Parties' consummation of this Settlement, or any other stipulation of dismissal of all claims as the Court may direct upon the Parties' consummation of this Settlement.

**2.3. Mailing of Notice and Settlement Checks.** As soon as practicable after the Effective Date, the Parties will cooperate in good faith to deliver to each Plaintiff and Potential Plaintiff a Notice of Settlement of Collective Action Lawsuit in the form attached hereto as Exhibit A (the "Notice"), together with such individual's Settlement Checks. UPS will facilitate the delivery of the Notices and Settlement Checks to Plaintiffs (either directly or through an agent retained for that purpose). The Parties will cooperate in good faith to obtain current mailing addresses for Putative Opt-In Plaintiffs for the purposes of this paragraph.

**2.4. Effect of Failure to Approve Settlement.** If the Court does not approve the Settlement, the Litigation will proceed as if no settlement had been attempted and no portion of the Settlement Amount will be distributed. However, the Parties will work together, diligently and in good faith, to address and remedy any issue(s) identified by the Court that would allow the Court to approve the Settlement.

**2.5. Releases and Consents to Join.**

(A)    All Settlement Checks shall contain on the back of the check, the following limited endorsement:

"**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join in the lawsuit entitled *Elizabeth Castro, et al. v. United Parcel Service, Inc.*, No. 18 Civ. 1286 (RJS), now pending in the United States District Court for the Southern District of New York, and I agree to be bound by the Joint Stipulation of Settlement and Release executed by the named Plaintiffs in this lawsuit and approved by the Court.

I irrevocably and unconditionally waive, release, and forever discharge any claim I might have against United Parcel Service, Inc., and its former and present parents and subsidiaries and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives, for any and all wage-and-hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, the New York Labor Law, and all applicable state and local wage-and-hour laws, and including without limitation statutory, constitutional, contractual, and common law claims for wages and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage-and-hour claim (including claims for overtime wages or any other wages) relating to travel time I incurred during my employment at UPS as a Combination Helper up to and including the date of the Approval Order and Judgment of Dismissal with Prejudice.

_____    Dated:_____ "
Signature

(B)    If the Parties are not able to include the entire text of the limited endorsement described in Section 2.5(A), above, on the back of the Settlement Checks, the Parties will include the endorsement on a document attached to and/or accompanying the Settlement Checks and incorporate it on the back of the Settlement Checks by reference; and/or take other steps to effectuate both a consent to join the Litigation and a release of the claims described in the limited endorsement, above, by virtue of the recipient of a Settlement Check signing the check.

## 3. SETTLEMENT TERMS

### 3.1. Settlement Terms

(A)    UPS agrees to pay a maximum Settlement Amount of Four Hundred Ninety-Four Thousand Nine Hundred Sixty-Seven Dollars and Forty-Five Cents ($494,967.45), allocated to individual Plaintiffs as set forth in Schedule A hereto, which shall fully resolve and satisfy any and all amounts to be paid to Plaintiffs and Potential Plaintiffs, to Plaintiffs' Counsel, or otherwise in connection with the Litigation or this Settlement. The Settlement Amount is inclusive of taxes to be withheld in accordance with Section 3.3, below. Other than the employer's share

of payroll taxes described in Section 3.3(C), UPS will not be required to pay more than the gross total of Four Hundred Ninety-Four Thousand Nine Hundred Sixty-Seven Dollars and Forty-Five Cents ($494,967.45) under the terms of this Agreement.

(B)     UPS agrees to issue checks to each Plaintiff in the amount of each Plaintiff's allocation as set forth in Schedule A hereto.  UPS will issue two checks to each Plaintiff:  one check for back wages, with appropriate withholdings (as discussed in Section 3.3, below), in the gross amount of one-half of each Plaintiff's allocation as set forth in Schedule A, and one check for liquidated damages and prejudgment interest in the amount of one-half of each Plaintiff's allocation as set forth in Schedule A.  UPS agrees to provide a copy of all Settlement Checks to Plaintiffs' counsel in advance of mailing, so that Plaintiffs' counsel can verify amounts, payees, and other details.  Plaintiffs' counsel will inform UPS of any issues with the Settlement Checks within three (3) business days of receiving such copy.

(C)     UPS agrees that it will mail the Settlement Checks to each Plaintiff within thirty (30) days after the Effective Date.  The Parties' counsel will cooperate to verify the Plaintiffs' and Potential Plaintiffs' mailing addresses, using the mailing addresses provided by the Plaintiffs in their consents to participate in this action or, if necessary, in other recent records.

(D)     Plaintiffs and Potential Plaintiffs will have ninety (90) days from the date of issue to cash their Settlement Checks (the Acceptance Period).

(E)     If a Plaintiff or Potential Plaintiff does not timely cash his or her Settlement Checks within the Acceptance Period, such Settlement Checks will be null and void; UPS will have no further responsibility to make any payment with respect to such Plaintiff or Potential Plaintiff except as may be individually negotiated between the Parties' counsel; and the gross amount of such Settlement Checks will be deducted from the Settlement Amount.  Any Plaintiff or Potential Plaintiff who does not timely cash his or her Settlement Checks within the Acceptance Period will not be a participant in this Settlement and will not release his or her claims in accordance with this Agreement.

(F)     If UPS's Counsel learns within the Acceptance Period that a Plaintiff or Potential Plaintiff did not receive his or her Settlement Checks because the Settlement Checks were sent to a prior or incorrect address, the Parties shall cooperate in good faith to promptly re-issue Settlement Checks to such individual.  The Acceptance Period for such Plaintiff or Potential Plaintiff will only begin to run from the date of mailing the second issue of the Settlement Checks.

## 3.2.   Attorneys' Fees and Costs.

(A)     Plaintiffs and Plaintiffs' Counsel are not seeking the payment of any attorneys' fees and costs from the Settlement Amount.  All attorneys' fees and costs incurred

by Plaintiffs in connection with the Litigation have been or will be borne by Local 804, IBT ("Local 804"), the union that represents the Combination Helpers.

(B)     UPS shall have no liability for Plaintiffs' attorneys' fees and costs, or any liability to Local 804 with respect to the claims covered by this Settlement.

(C)     Notwithstanding the foregoing, Plaintiffs reserve all their rights in the event that this Settlement is not approved by the Court.

**3.3.    Tax Characterization.**

(A)     For tax purposes, 50% of payments to Plaintiffs pursuant to Section 3.1 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B)     Payments treated as back wages pursuant to Section 3.3(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS"), state or local tax agencies (as required), and the payee under the payee's name and social security number on an IRS Form W-2 issued by the payor in 2019.  Payments treated as interest and/or liquidated damages pursuant to Section 3.3(A) shall be made without withholding and shall be reported to the IRS, state or local tax agencies (as required), and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099-MISC issued by the payor in 2019.

(C)     UPS shall pay the employer's share of any federal and state taxes due with respect to the amounts treated as back wages pursuant to Section 3.3(A), and shall remit all such taxes withheld to the IRS and/or other appropriate taxing agencies.

(D)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Participating Plaintiff receiving Settlement Checks.

(E)     Neither Party shall bear any responsibility or liability for the other Party's tax obligations.

(F)     Neither Plaintiffs' Counsel nor UPS's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

**4.  RELEASE**

**4.1.    Release of Claims**

By operation of the entry of the Approval Order and Judgment of Dismissal with Prejudice, and except as to such rights or claims as may be created by this Agreement, each Participating Plaintiff fully and finally irrevocably and unconditionally waives,

releases, and forever discharges any claim against United Parcel Service, Inc. and its former and present parents and subsidiaries and their officers, directors, and managers (collectively, the "Released Parties") for any and all wage-and-hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, the New York Labor Law, and all applicable state and local wage-and-hour laws, and including without limitation statutory, constitutional, contractual, and common law claims for wages and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage-and-hour claim (including claims for overtime wages) relating to travel time incurred during his or her employment with UPS as a Combination Helper up to and including the Effective Date of this Settlement with Prejudice ("Released Claims").

4.2.   **Non-Admission of Liability.**  UPS has agreed to the terms of Settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this Settlement will (i) provide substantial benefits to UPS's shareholders, (ii) avoid the further expense and disruption of UPS's business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this Agreement shall be deemed or used as an admission of liability by UPS.

## 5.  INTERPRETATION AND ENFORCEMENT

5.1.   **Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement, including locating and contacting any Potential Plaintiffs.

5.2.   **No Assignment.**  Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3.   **Entire Agreement.**  This Agreement is an integrated contract that constitutes and contains the entire agreement between the Parties with regard to the subject matter contained herein and supersedes and replaces all prior negotiations and agreements, proposed or otherwise, written or oral, concerning the subject matter contained herein.  All prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4.   **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, and assigns.

5.5.   **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement

and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6.**   **Captions.**   The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7.**   **Construction.**   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8.**   **Severability.**   If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable (other than Section 4.1), the remaining portions of this Agreement will remain in full force and effect.

**5.9.**   **Governing Law.**   This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that federal law governs.

**5.10.**   **Continuing Jurisdiction.**   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.  However, if the Court should refuse or decline to accept jurisdiction over the settlement for any reason, the Parties agree that this Agreement may be enforced in any court of competent jurisdiction located in the State of New York, County of New York.  The Court's refusal to retain jurisdiction over the settlement shall not void or otherwise effect this Agreement.

**5.11.**   **Waivers, Modifications, and Amendments.**   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12.**   **Counterparts.**   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13.**   **Facsimile and Email Signatures**.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: <u>June 28</u>, 2018        **UNITED PARCEL SERVICE, INC.**

By: _____

Its: <u>District Labor Relations Manager</u>

DATED: _____, 2018        **ELIZABETH CASTRO**

_____

DATED: _____, 2018        **AQUANZA JONES**

_____

DATED: _____, 2018        **KASLYN BELGRAVE**

_____

DATED: _____, 2018        **FRANCIS COOPER**

_____

DATED: _____, 2018        **RAWLE CUMMINGS**

_____

DATED: _____, 2018        **SCOTT DiBONA**

_____

DATED: _____, 2018        **DAVID GOTAY**

_____

**WE AGREE TO THESE TERMS,**

DATED: _____, 2018        **UNITED PARCEL SERVICE, INC.**


By: _____


Its: _____

DATED: _____, 2018        **ELIZABETH CASTRO**


DATED: _____, 2018        **AQUANZA JONES**


DATED: _____, 2018        **KASLYN BELGRAVE**


DATED: _____, 2018        **FRANCIS COOPER**


DATED: _____, 2018        **RAWLE CUMMINGS**


DATED: _____, 2018        **SCOTT DiBONA**


DATED: _____, 2018        **DAVID GOTAY**

**WE AGREE TO THESE TERMS,**

DATED: _____, 2018          **UNITED PARCEL SERVICE, INC.**

                             By: _____

                             Its: _____

DATED: _____, 2018          **ELIZABETH CASTRO**

                             _____

DATED: 6 – 28, 2018          **AQUANZA JONES**

                             *Aquanza Jones*

DATED: _____, 2018          **KASLYN BELGRAVE**

                             _____

DATED: _____, 2018          **FRANCIS COOPER**

                             _____

DATED: _____, 2018          **RAWLE CUMMINGS**

                             _____

DATED: _____, 2018          **SCOTT DiBONA**

                             _____

DATED: _____, 2018          **DAVID GOTAY**

                             _____

**WE AGREE TO THESE TERMS,**

DATED: _____, 2018          **UNITED PARCEL SERVICE, INC.**

By: _____

Its: _____

DATED: _____, 2018          **ELIZABETH CASTRO**

_____

DATED: _____, 2018          **AQUANZA JONES**

_____

DATED: 6-28 2018             **KASLYN BELGRAVE**

_____

DATED: _____, 2018          **FRANCIS COOPER**

_____

DATED: _____, 2018          **RAWLE CUMMINGS**

_____

DATED: _____, 2018          **SCOTT DiBONA**

_____

DATED: _____, 2018          **DAVID GOTAY**

_____

.... AGREE TO THESE TERMS,

DATED: _____, 2018          **UNITED PARCEL SERVICE, INC.**

                              By: _____

                              Its: _____

DATED: _____, 2018          **ELIZABETH CASTRO**

                              _____

DATED: _____, 2018          **AQUANZA JONES**

                              _____

DATED: _____, 2018          **KASLYN BELGRAVE**

                              _____

DATED: _____, 2018          **FRANCIS COOPER**

                              _____

DATED: _____, 2018          **RAWLE CUMMINGS**

                              _____

DATED: _____, 2018          **SCOTT DiBONA**

                              _____

DATED: _____, 2018          **DAVID GOTAY**

                              _____

WE AGREE TO THESE TERMS,

DATED: ___ ___, 2018          UNITED PARCEL SERVICE, INC.

By: _____

Its: _____

DATED: ___ ___, 2018          **ELIZABETH CASTRO**

_____

DATED: ___ ___, 2018          **AQUANZA JONES**

_____

DATED: ___ ___, 2018          **KASLYN BELGRAVE**

_____

DATED: ___ ___, 2018          **FRANCIS COOPER**

_____

DATED: ___ ___, 2018          **RAWLE CUMMINGS**

_____

DATED: 06-28 ___, 2018        **SCOTT DiBONA**

_S DiBon_____

DATED: ___ ___, 2018          **DAVID GOTAY**

_____

WE AGREE TO THESE TERMS,

DATED: _____, 2018     **UNITED PARCEL SERVICE, INC.**

By: _____

Its: _____

DATED: _____, 2018     **ELIZABETH CASTRO**

_____

DATED: _____, 2018     **AQUANZA JONES**

_____

DATED: _____, 2018     **KASLYN BELGRAVE**

_____

DATED: _____, 2018     **FRANCIS COOPER**

_____

DATED: _____, 2018     **RAWLE CUMMINGS**

_____

DATED: _____, 2018     **SCOTT DiBONA**

_____

DATED: _6, 26_, 2018     **DAVID GOTAY**

_David Gotay_____

-9-

DATED: **6.28**, 2018          **JESSICA GRANDY**

**SCHEDULE A**
**Plaintiff Allocations**

| | | | |
|---|---|---|---|
| 1. | Patrick | Alessi | $2,321.88 |
| 2. | Tayser | Al-Khatib | $8,262.55 |
| 3. | Marcus | Alston | $4,795.46 |
| 4. | Anthony | Antoine | $2,074.26 |
| 5. | Shane | Arana | $4,592.59 |
| 6. | Luis | Arboleda | $5,316.47 |
| 7. | Xavier | Asqui | $6,632.39 |
| 8. | Donovan | Bailey | $2,500.14 |
| 9. | Bridgit | Barr | $3,851.35 |
| 10. | Christopher | Barrett | $5,225.01 |
| 11. | Rich | Beach | $2,096.85 |
| 12. | Kaslyn | Belgrove | $3,445.21 |
| 13. | Adesha | Boatwright | $4,751.54 |
| 14. | Shanise | Boley | $4,526.37 |
| 15. | Byron | Brooks | $5,257.16 |
| 16. | Sean | Byrne | $3,846.98 |
| 17. | Charles | Caldwell | $4,729.32 |
| 18. | Haakim | Callender | $681.00 |
| 19. | Randall | Callender | $2,811.00 |
| 20. | Jason | Caraballo | $4,792.93 |
| 21. | Sean | Carney | $2,641.60 |
| 22. | Elizabeth | Castro | $8,234.84 |
| 23. | Alick | Charles | $3,069.09 |
| 24. | Neon | Chou | $3,770.39 |
| 25. | Francis | Cooper | $2,095.96 |
| 26. | Anthony | Corrales | $6,478.97 |
| 27. | Rudy | Correa | $4,258.74 |
| 28. | Daniel | Corulla | $2,214.07 |
| 29. | Rawle | Cummings | $7,693.74 |
| 30. | Jamel | Cyrille | $7,929.77 |
| 31. | Jared | Davis | $4,737.49 |
| 32. | Kenny | Davis | $4,236.67 |
| 33. | Landon | Defay | $4,254.64 |
| 34. | Dominic | DelGiorno | $3,282.08 |
| 35. | Willie | Dillard | $5,299.97 |
| 36. | Sandy | Disla | $3,982.07 |
| 37. | Jermaine W. | Doctor | $2,502.01 |
| 38. | Gail | Dominque | $1,032.85 |
| 39. | Randall | Ephraim | $1,600.55 |

| | | | |
|---|---|---|---|
| 40. | Lonnie | Farr | $9,074.01 |
| 41. | Lewis | Felix | $6,967.97 |
| 42. | Marisol | Figueroa | $3,258.64 |
| 43. | Eric | Finn | $3,574.04 |
| 44. | Thomas | Garcia | $3,196.83 |
| 45. | Dyson | George | $6,776.47 |
| 46. | Garygan | German | $5,335.27 |
| 47. | Norache | Gomez | $6,860.63 |
| 48. | David | Gotay | $3,559.55 |
| 49. | Jessica | Grandy | $2,731.28 |
| 50. | Iona | Gray | $5,809.79 |
| 51. | Troy | Hall | $5,777.78 |
| 52. | Orrett | Hanson | $5,430.05 |
| 53. | Paul | Harriot | $7,309.43 |
| 54. | Genaro | Herring | $3,202.37 |
| 55. | Errol | Hibbert | $2,186.44 |
| 56. | Celia | Holmes | $4,699.83 |
| 57. | Joshua | Howard | $3,363.53 |
| 58. | Shamell | Jackson | $3,423.71 |
| 59. | Kenny | Jean | $2,077.51 |
| 60. | Youri | Jean Louis | $2,443.38 |
| 61. | Randy | Jefferson | $4,731.46 |
| 62. | Sahran | John | $3,569.53 |
| 63. | Karena | Johnson | $6,528.17 |
| 64. | Kiam | Johnson | $3,186.52 |
| 65. | Nathanael | Johnson | $2,093.01 |
| 66. | Aquanza | Jones | $10,852.34 |
| 67. | Wayne | Jones | $4,895.69 |
| 68. | Rashaan | Jones | $6,668.07 |
| 69. | Ako | Jones | $4,162.25 |
| 70. | Paul | Kory | $515.22 |
| 71. | Adam | Kushner | $1,645.34 |
| 72. | Darrell | Lee | $1,924.69 |
| 73. | Kevin | Lewis | $3,906.70 |
| 74. | Keith | Livingstone | $8,311.07 |
| 75. | Abdalla | Lucas | $4,967.91 |
| 76. | Levar | Marshall | $3,183.66 |
| 77. | Dwayne | Mason | $2,260.69 |
| 78. | Albert | McCord | $3,309.35 |
| 79. | Lionel | Menard | $7,054.98 |
| 80. | T'challa | Mercer | $2,615.00 |

| | | | |
|---|---|---|---|
| 81. | Elton | Miller | $3,774.13 |
| 82. | Tina | Moore | $1,754.16 |
| 83. | Terrell | Mosley | $5,010.67 |
| 84. | Mtinima | Moyo | $4,284.81 |
| 85. | Orlan | Murray | $2,357.98 |
| 86. | Teon | Newton | $2,667.31 |
| 87. | William | Nunez | $6,583.18 |
| 88. | George | Pachas | $309.81 |
| 89. | Edwin | Padilla | $198.34 |
| 90. | Anthony | Pearson | $4,968.75 |
| 91. | Dwayne | Pond | $3,374.35 |
| 92. | William | Prunty | $3,223.33 |
| 93. | Iyezidy | Reyes | $3,566.85 |
| 94. | Ruth | Richards | $3,354.95 |
| 95. | Alexander | Richardson | $2,371.65 |
| 96. | Michael | Romanszysn | $2,162.64 |
| 97. | Calvin | Ruggs | $3,598.74 |
| 98. | Wilfredo | Sanchez | $3,802.49 |
| 99. | Jorge | Sangster | $3,623.47 |
| 100. | Shawn | Santiago | $4,014.73 |
| 101. | Christopher | Saunders | $6,028.21 |
| 102. | Calvert | Solomon | $9,081.40 |
| 103. | Ricardo | Soto | $2,803.03 |
| 104. | Luigi | St. Fort | $5,978.20 |
| 105. | Brian | Sudol | $650.18 |
| 106. | Patrick | Thomas | $7,356.79 |
| 107. | Wilmi | Thomas | $4,587.36 |
| 108. | Sean | Vankallen | $6,384.42 |
| 109. | Juan | Ventura | $3,834.36 |
| 110. | Jeremy | Viera | $3,039.34 |
| 111. | Samson | Villalba | $3,286.34 |
| 112. | Natasha | Williamson | $3,183.39 |
| 113. | Anthony | Wilson | $5,535.15 |
| 114. | Kwan Nok | Wong | $2,917.52 |
| 115. | Sherman | Wong | $4,977.57 |
| 116. | Kenneth | Wright | $3,067.30 |
| 117. | Ronald | Anderson | $60.66 |
| 118. | George | Berth | $3,885.01 |
| 119. | Scott | Dibona | $1,384.97 |
| 120. | Alvin | Durant | $5,523.24 |
| 121. | Shawn | Wright | $1,134.61 |

**TOTAL**    **$494,967.45**